**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-2250

TANNER HIRSCHFELD; NATALIA MARSHALL,

        Plaintiffs – Appellants,

v.

BUREAU OF ALCOHOL, FIREARMS, TOBACCO & EXPLOSIVES; MARVIN RICHARDSON, Acting Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives; MERRICK B. GARLAND, Attorney General,

        Defendants – Appellees.

------------------------------

BRADY; GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE; EVERYTOWN FOR GUN SAFETY SUPPORT FUND,

        Amici Supporting Appellee.

ILLINOIS; CALIFORNIA; CONNECTICUT; DELAWARE; THE DISTRICT OF COLUMBIA; HAWAII; MASSACHUSETTS; MICHIGAN; MINNESOTA; NEW JERSEY; NEW MEXICO; NEW YORK; NORTH CAROLINA; OREGON; PENNSYLVANIA; RHODE ISLAND; VERMONT; WASHINGTON; COMMONWEALTH OF VIRGINIA; STATE OF MARYLAND; MARCH FOR OUR LIVES ACTION FUND,

        Amici Supporting Rehearing Petition.

Appeal from the United States District Court for the Western District of Virginia at Charlottesville. Glen E. Conrad, Senior District Judge. (3:18−cv−00103−GEC)

Argued: October 30, 2020                            Decided: September 22, 2021

Before AGEE, WYNN, and RICHARDSON, Circuit Judges.

Motion to intervene or join new parties denied; motion to vacate prior opinions granted; remanded with directions to dismiss. Judge Richardson wrote the opinion, in which Judge Agee joined. Judge Wynn wrote an opinion concurring in the result.

RICHARDSON, Circuit Judge:

Plaintiff Natalia Marshall, while under the age of 21, wished to purchase a handgun from a federally licensed firearms dealer and sued to challenge the constitutionality of the federal laws and regulations which prohibited her from doing so while she was 18–20 years old.  A divided panel of this court found those laws violated the text, structure, history, and tradition of the Second Amendment.  After the opinion issued but before the mandate, Marshall turned 21.  And that made her claims moot.  Despite efforts to add parties and reframe her claimed injuries, it is too late to revive this case.  So it must be dismissed as moot.

Once a case is rendered moot on appeal, we customarily vacate the opinions and remand with direction to dismiss.  *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–40 (1950); *Norfolk S. Ry. v. City of Alexandria*, 608 F.3d 150, 161 (4th Cir. 2010).  After weighing the equities, we follow that custom here.

**I.     This case is moot**

We, of course, have only the power to adjudicate "Cases" and "Controversies."  U.S. Const. art. III, § 2.  A "Case" or "Controversy" under Article III no longer exists "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)).  The case is instead moot and must be dismissed, "[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit."  *Id.*  Here, Marshall challenged the prohibition on buying a handgun from a federally licensed firearms dealer while she was under 21.  Once she turned

3

21, nothing prohibited her from buying the handgun she desired from a dealer of her choice. So her original claims are now moot. *See Craig v. Boren*, 429 U.S. 190, 192 (1976).[1]

To try to breathe new life into her claims after they became moot, Marshall alleged for the first time that she wishes to sell handguns to friends under 21. Those private sales would not typically be affected by the challenged laws and regulations. But Marshall seeks to bring those sales within this court's purview by alleging that she wishes to use a federally licensed firearm dealer to facilitate the sales (by, for example, running background checks on her friends).[2] This newly alleged injury was raised for the first time on appeal, and only after the case became moot, so we refuse to consider it here.

A second effort to revive this case by adding new parties also fails. Surely recognizing the mootness concern, Plaintiff's attorney moved in the district court on July 24—the day before Marshall turned 21—to join new parties that might keep the case alive. But the district court lacked jurisdiction to grant the motion. *See Doe v. Pub. Citizen*, 749 F.3d 246, 258 (4th Cir. 2014) ("[A]n effective notice of appeal divests a district court of jurisdiction to entertain an intervention motion.").[3] Plaintiff's attorney only submitted a

---

[1] Marshall made no effort to claim she may seek damages.

[2] *See Recordkeeping and Background Check Procedure for Facilitation of Private Party Firearms Transfers*, ATF PROCEDURE 2020-2 (Sept. 2, 2020).

[3] We have held that a motion to intervene can avoid being mooted by the dismissal of the underlying action if the motion was made when the case was live and the intervenors can still seek a remedy. *CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 475 (4th Cir. 2015). But in that case the court had a pending appeal on the intervention issue before (Continued)

motion to our court on July 27, two days after Marshall turned 21. By that time, the case was moot. And we cannot grant a motion to join new parties that was filed after a case is moot. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72–75 (2013).[4] So the requests to join new parties are denied. This case is moot and must be dismissed.

## II.     The opinions are vacated

As the case is moot and must be dismissed, the government asks that we also vacate both the panel opinions and district court opinions. This is indeed our customary practice. *See Norfolk S. Ry.*, 608 F.3d at 161. But it is not, as once commonly thought, mandatory.

---

the case became moot. *Id.* And if the appeal succeeded, a properly granted motion to intervene would have prevented the case from ever being moot in the first place. *Id.* at 476. Here, we did not have a motion before us until after the case was moot, and no valid appeal exists for the district court's denial of the jurisdictionally improper motion.

[4] There is a line of cases in which the Supreme Court has permitted dropping a non-diverse party to cure problems with jurisdiction that existed at the time of filing. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 73 (1996); *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832–33 (1989). Those cases seem to indicate that we can cure jurisdictional defects by joining or dropping parties. But these cases addressed issues with complete diversity. *Id.* Minimal diversity was present. So the Court was curing a problem with statutory jurisdiction, not Article III jurisdiction. *See Newman-Green*, 490 U.S. at 829 n.1; *Caterpillar*, 519 U.S. at 68 n.3; *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572, 577–78 n.6 (2004); *id.* at 584, 588–99 (Ginsburg, J., dissenting).

We note one case, *Mullaney v. Anderson*, where the Supreme Court allowed the joinder of several parties with standing under Rule 21 in response to concerns about the standing of the original parties. 342 U.S. 415, 416–17 (1952). This implies that whether the original parties had standing was irrelevant because the joinder of proper parties could cure any lack of Article III jurisdiction. But we do not take such assumptions as holdings. *See Webster v. Fall*, 266 U.S. 507, 511 (1925).

5

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25-26 (1994).[5] Rather, it is an "equitable tradition" informed by equitable reasoning. *Id.* In determining whether to exercise the discretion to vacate our panel decision (and that of the district court), we are "informed almost entirely, if not entirely, by the twin considerations of fault and public interest." *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 118 (4th Cir. 2000).

We cannot assign fault to either party here. Marshall was bound to turn 21 in time. And though the efforts to remedy mootness came at the eleventh hour, they do not reflect any fault in Marshall's original case. So our decision turns on the public interest.

There are strong reasons to avoid vacatur here. The constitutional interests implicated and the short timeframe in which to challenge the restrictions mean there is a strong public interest in this precedent. And "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole." *Bancorp*, 513 U.S. at 26; *see also Humphreys v. Drug Enf't Admin.*, 105 F.3d 112, 116 (3d Cir. 1996); *Hall v. Louisiana*, 884 F.3d 546, 553 (5th Cir. 2018).

---

[5] Before *Bancorp*, some believed dictum in *Munsingwear* required vacating opinions after the case became moot. *See, e.g.*, *In re Ghandtchi*, 705 F.2d 1315, 1316 (11th Cir. 1983). *But see Clipper v. Takoma Park*, 898 F.2d 18 (4th Cir. 1989) (en banc). But *Bancorp* explained that the *Munsingwear* "mandate" was dicta and that equitable principles govern the practice. *Bancorp*, 513 U.S. at 23; *see also Azar v. Garza*, 138 S. Ct. 1790, 1792 (2018) ("Because this practice is rooted in equity, the decision whether to vacate turns on 'the conditions and circumstances of the particular case.'"); *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 121 (4th Cir. 2000); *SD Voice v Noem*, 987 F.3d 1186, 1190-91 (8th Cir. 2021).

Yet the public interest still favors vacating the opinions. To begin, our "customary practice when a case is rendered moot on appeal is to vacate the moot aspects of the lower court's judgment" and remand with directions to dismiss. *Norfolk S. Ry.*, 608 F.3d at 161. Adherence to our custom promotes the "orderly operation of the federal judicial system" and thus protects the public interest. *Bancorp*, 513 U.S. at 27. This course also "clears the path for future relitigation of the issues between the parties." *Alvarez v. Smith*, 558 U.S. 87, 94 (2009) (quoting *Munsingwear*, 340 U.S. at 40). That the case became moot by happenstance also favors vacatur. *Bancorp*, 513 U.S. at 25 n.3 ("[M]ootness by happenstance provides sufficient reason to vacate."). And we are reluctant to leave a preclusive judgment standing against a federal agency responsible for enforcing federal law while cutting off the appellate process, particularly where the panel is split in its views.

Finally, we note that the public and the "legal community as a whole," *Bancorp*, 513 U.S. at 26, will still retain some benefit from the panel opinion even if vacated, because the exchange of ideas between the panel and dissent will remain available as a persuasive source. *See Hirschfeld v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 5 F.4th 407 (4th Cir. 2021) (*now vacated as moot*).

As a result, we deny the motion to intervene or join new parties; we reject the attempt to recast Marshall's injuries; we find the case moot; we remand to the district court with directions to dismiss as moot; and we vacate the prior panel opinions and the opinions of the district court.

MOTIONS GRANTED IN PART AND DENIED IN PART;<br>VACATED AND REMANDED WITH DIRECTIONS TO DISMISS AS MOOT

WYNN, Circuit Judge, concurring in the result of the Orders of Dismissal and Vacatur:

I join my fine colleague's opinion *in adhering* to our usual practice of vacatur in mooted cases like this one. I write separately to emphasize that while, thanks to today's technology, *all* vacated opinions remain available in the public sphere, they have no legal value. "Once vacated, [a prior opinion] los[es] precedential value within this circuit."* *In re Naranjo*, 768 F.3d 332, 344 n.15 (4th Cir. 2014) (quoting *In re Grand Jury Matter*, 926 F.2d 348, 350 (4th Cir. 1991)); *see also Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1029 n.10 (4th Cir. 1993) (panel opinion vacated upon grant of rehearing en banc has "no precedential value"). The outcome here is that not only is the panel opinion vacated, but the entire matter including the district court's decision is moot and therefore vacated. That is, this action from its inception is mooted.

To be sure, vacated opinions do not even bear the label of dicta. So if there is any persuasive value arising from vacated opinions, it can be no more than the value of newspaper editorials. Thus, my fine colleagues' statement that "the panel and dissent will remain available as a persuasive source" means, like newspaper editorials, readers may themselves be persuaded one way or the other by our exchanges, but these vacated opinions have no persuasive value whatsoever as to how this Court would decide this issue.

---

* We have previously assumed without deciding "that when a judgment of this Court has been vacated by the Supreme Court, the opinion containing that judgment is still entitled to some precedential value" as to those grounds not covered by the Supreme Court's ruling. *E.E.O.C. v. City of Norfolk Police Dep't*, 45 F.3d 80, 83 (4th Cir. 1995). But we noted that it "is not at all clear" that that is the case. *Id.* at 83 n.4. In any event, that is not what happened here.

8

This point is especially important here, where the opinions arising from our deeply divided panel became moot before the Court's en banc process could be undertaken. It stands to reason that because the now-vacated panel majority opinion created a circuit split while overturning a fifty-year-old federal law, this matter surely met the requirements of Rule 35 for en banc review.

With that said, I join in the dismissal of this matter as moot and the vacatur of the panel opinions. Perhaps our circuit will again confront this issue, but today is not that day.

9